DAN DE FARMS, INC v STERLING FARM SUPPLY, INC
(ON SECOND REMAND)

Docket No. 217413. Submitted August 22, 2002, at Lansing. Decided September 27, 2002, at 9:05 A.M. Leave to appeal sought.

Dan De Farms, Inc., brought an action in the Arenac Circuit Court against Sterling Farm Supply, Inc., the Michigan Department of Agriculture, and Michigan Millers Mutual Insurance Company after Sterling, a licensed grain dealer, failed to make full payment for grain it had purchased on credit from the plaintiff. The plaintiff's action sought recovery under a bond issued by Michigan Millers pursuant to the Grain Dealers Act, MCL 285.61 *et seq.*, to Sterling with the department listed as the beneficiary. The court, Michael G. Baumgartner, J., granted summary disposition for the defendants, ruling that the bonding provisions of the act did not cover the transactions between the plaintiff and Sterling. The plaintiff appealed. The Court of Appeals, after reviewing the legislative history of the Grain Dealers Act, affirmed, holding that the bonding requirements of subsection 7a(1) of the Grain Dealers Act, MCL 285.67a(1), have always applied only to warehouse receipt transactions for bailed grain and that because the transactions in this matter were not warehouse receipt transactions, the bond at issue did not cover the plaintiff. 244 Mich App 278 (2001). The plaintiff sought leave to appeal to the Supreme Court, which, in lieu of granting leave to appeal, vacated the decision of the Court of Appeals on the basis that the Court of Appeals had considered extratextual evidence of legislative intent without first finding an ambiguity in the statutory language, and remanded the matter to the Court of Appeals with instructions that the Court may engage in judicial construction only if it determines that the statutory language is ambiguous. 465 Mich 872 (2001). On remand, the Court of Appeals held that MCL 285.67a, as it existed during the period relevant to this case, was ambiguous with regard to whether the bonding requirements of the statute apply to all grain dealers for all transactions or only to warehouse receipt transactions for bailed grain. The Court, having found the statute to be ambiguous and in need of judicial interpretation, including examination of extratextual evidence of legislative intent, readopted the language and reasoning of its original opinion. 248 Mich App 511 (2001). The plain-

tiff sought leave to appeal to the Supreme Court, which, in lieu of granting leave to appeal, vacated the opinion issued on remand and remanded the matter for further consideration and issuance of a new opinion, noting that nowhere in the opinion on remand did the Court of Appeals identify the specific language of the statute that is allegedly ambiguous or explain how or why the language is ambiguous. 467 Mich 857 (2002).

On second remand, the Court of Appeals *held*:

1. The statute is ambiguous with regard to whether the bonding requirement of subsection 7a(1) applies to all grain dealers and their transactions or only to warehouse receipt transactions. The statute suggests that grain dealers may fall into eight different categories.

2. Although the first sentence of subsection 7a(1) suggests that the subsection applies to all grain dealers, the penultimate sentence pertains to the bonding requirements for grain dealers who are either bailees of grain or who issue warehouse receipts and have a storage facility. The last sentence applies only to grain dealers who do not own a farm produce storage or handling facility or do not own a vehicle to transport farm produce. The last two sentences do not cover all grain dealers and, in certain circumstances, apply conflicting bonding requirements to the same grain dealer.

3. The ambiguity is resolved when the statute is read as applying only to grain dealers who are bailees of farm produce or who issue warehouse receipts. The penultimate sentence applies where the grain dealer has storage capacity and the last sentence applies where the grain dealer does not have storage capacity. The distinction between grain dealers referred to in the last two sentences is not between bailees and nonbailees, but between those bailees who have storage capacity and those who do not.

Affirmed.

AGRICULTURE — GRAIN DEALERS — BONDS.

The bond requirements for licensure as a grain dealer under the Grain Dealers Act cover only warehouse receipt transactions for bailed grain (MCL 285.67a[1]).

*Abbey & Abbey* (by *Thomas D. Abbey*) for Dan De Farms, Inc.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Randall Whitworth*,

Assistant Attorney General, for the Department of Agriculture.

*Willingham & Coté, P.C.* (by *John A. Yeager* and *Curtis R. Hadley*), for Michigan Millers Mutual Insurance Company.

ON SECOND REMAND

Before: Gage, P.J., and Holbrook, Jr., and Sawyer, JJ.

Sawyer, J. This matter is once again before us. Earlier, the Supreme Court, in lieu of granting leave to appeal, vacated our original opinion, *Dan De Farms, Inc v Sterling Farm Supply, Inc*, 244 Mich App 278; 625 NW2d 393 (2001), and directed us to reconsider this matter in light of *Sun Valley Foods Co v Ward*, 460 Mich 230; 596 NW2d 119 (1999). 465 Mich 872 (2001). Specifically, the Supreme Court concluded that we erred in considering extratextual evidence of legislative intent in interpreting MCL 285.67a(1) without first finding that an ambiguity existed in the statutory language. *Dan De Farms, supra.* In our opinion on remand, we stated that we thought it obvious from our original opinion that we found the statute to be ambiguous, but that we apparently overlooked the requirement that we explicitly state such a finding in our opinion. *Dan De Farms, Inc v Sterling Farm Supply, Inc (On Remand)*, 248 Mich App 511, 513; 640 NW2d 583 (2001). We then stated that we found MCL 285.67a, as it existed at the times relevant to this case, to be ambiguous with regard to whether the bonding requirements of that statute apply to all grain dealers for all transactions or is limited to warehouse

receipt transactions for bailed grain. Having found the statute to be ambiguous and in need of judicial interpretation, including examination of extratextual evidence of legislative intent, we then readopted our original reasoning and original opinion.

Plaintiff again sought leave to appeal to the Supreme Court and, in lieu of granting leave to appeal, the Court again vacated our opinion and remanded the matter to us for further consideration and issuance of a new opinion. The shortcomings of our opinion on remand are identified as follows:

> However, nowhere in its opinion on remand has the Court of Appeals identified the specific language of the statute which is allegedly ambiguous or explained how or why that language is ambiguous. Pursuant to the remand, the Court of Appeals is to do so and issue an opinion resolving this concern. [*Dan De Farms* [, *Inc*] *v Sterling Farm Supply, Inc*, 467 Mich 857 (2002).]

We do note that Justice CAVANAGH, joined by Justice KELLY, dissented, opining as follows:

> I dissent from yet another remand. The Court of Appeals found the statute involved here to be ambiguous "with regard to whether the bonding requirements of that statute apply to all grain dealers for all transactions or is limited to warehouse receipt transactions for bailed grain." That Court's original six-page opinion and the six-page opinion on remand are sufficiently clear, in my view, to warrant a denial of leave in this matter. [*Id.* at 857-858.]

Although we agree with Justice CAVANAGH that we thought our reasoning was sufficiently clear in our earlier opinions, we shall endeavor to lend greater clarity to this issue. At the times relevant to this case, MCL 285.67a(1) provided as follows:

An application for a grain dealer's license shall be made on a form provided by the director, shall be filed 30 days in advance of a license expiration date if there is an outstanding license, and shall be accompanied by a sufficient bond on a form provided by the director or an irrevocable letter of credit on a form provided by the director in favor of the department of agriculture which fulfills the requirements of subsection (4). The bond shall run to the department of agriculture with sufficient surety conditioned for the faithful performance of the duties of a grain dealer and compliance with all laws of this state relating to grain dealers. The amount of the bond for a grain dealer who is a bailee of farm produce or who issues warehouse receipts shall be $15,000.00 for the first 10,000 bushels of storage capacity of the grain dealer, plus $5,000.00 for each additional 10,000 bushel capacity or fraction of that capacity used for the storage of warehouse receipted farm produce. The amount of the bond for a grain dealer who does not own a farm produce storage or handling facility or does not own a vehicle used to transport farm produce shall be $50,000.00.

What we find to be ambiguous is whether the bonding requirement of the statute applies to all grain dealers and their transactions, as urged by plaintiff, or, as determined by the trial court and this Court in its earlier opinions, only to warehouse receipt transactions.

The ambiguity arises because the statute alternates between general references to "grain dealers" and to grain dealers who are bailees of farm produce or who issue warehouse receipts for stored grain. While it is certainly possible that a statute would provide different rules for different classes of grain dealers, that is not the case here because not all potential classes of grain dealers are covered by the statute. The first sentence of the statute suggests that the bonding requirement applies to all classes of grain dealers. However, when looking at the two final sentences of the stat-

ute, which establish the amount of the bond, we discover that the statute cannot cover all grain dealers because a bond amount is not established for all grain dealers and, worse yet, the statute applies two contradictory bond amounts for other dealers.

Specifically, the next to last sentence of the statute establishes the bond requirement for "a grain dealer who is a bailee of farm produce or who issues warehouse receipts" and sets forth the amount of the bond based on the grain dealer's storage capacity. The last sentence of the statute sets forth a flat-rate bond amount for "a grain dealer who does not own a farm produce storage or handling facility or does not own a vehicle used to transport farm produce . . . ." However, these two categories of grain dealers do not encompass the entire universe of all grain dealers and in other cases overlap. The wording of these two sentences suggests that grain dealers may fall into at least eight different categories on the basis of their status as bailees of farm produce or issuers of warehouse receipts and whether they have storage or handling facilities and a vehicle to transport farm produce: (1) Grain dealers who are bailees of farm produce or who issue warehouse receipts and who do have storage/handling facilities but do not own a vehicle to transport farm produce, (2) grain dealers who are bailees of farm produce or who issue warehouse receipts and who do have storage/handling facilities and do own a vehicle to transport farm produce, (3) grain dealers who are bailees of farm produce or who issue warehouse receipts and who do not have storage/handling facilities and do not own a vehicle to transport farm produce, (4) grain dealers who are bailees of farm produce or who issue warehouse

receipts and who do not have storage/handling facilities but do own a vehicle to transport farm produce, (5) grain dealers who are not bailees of farm produce and do not issue warehouse receipts and who do have storage/handling facilities but do not own a vehicle to transport farm produce, (6) grain dealers who are not bailees of farm produce and do not issue warehouse receipts and who do not have storage/handling facilities and do not own a vehicle to transport farm produce, (7) grain dealers who are not bailees of farm produce and do not issue warehouse receipts and who do not have storage/handling facilities but do own a vehicle to transport farm produce, (8) grain dealers who are not bailees of farm produce and do not issue warehouse receipts and who do have storage/handling facilities and do own a vehicle to transport farm produce.

Now, if we attempt to apply the bonding requirements as set forth in the statute to these various categories of grain dealers, the ambiguity becomes, we think, obvious. We must keep in mind that the penultimate sentence applies by its terms only to grain dealers who are either bailees of grain or who issue warehouse receipts and have a storage facility (because the bond amount is based on the storage capacity). Similarly, the last sentence applies only to grain dealers who do not own a farm produce storage or handling facility or do not own a vehicle to transport farm produce. The bonding requirements for the various categories are as follows:

Category 1: Both bonding requirements apply. The penultimate sentence applies because the grain dealer bails grain or issues a warehouse receipt. The last sentence applies because the grain dealer does not own a vehicle to trans-

port farm produce. Therefore, it's ambiguous whether the bond based on storage capacity or the flat rate bond would apply.

Category 2: This obviously is covered by the penultimate sentence and is excluded under the last sentence;

Category 3: Both bonding requirements apply for the same reasons as with category 1 and therefore it is ambiguous;

Category 4: Once again ambiguous because both provisions apply, the penultimate sentence because the dealer is a bailee or issues warehouse receipts and the last sentence because he does not own a storage facility;

Category 5: The flat rate bond applies because the penultimate sentence does not apply because the dealer does not bail grain or issue receipts and the last sentence applies because the dealer does not own a vehicle.

Category 6: Same as category 5 (although a strict reading of the word "or" in the last sentence arguably renders it ambiguous because both the lack of a storage facility and the lack of a vehicle apply, rather than one "or" the other).

Category 7: Neither bonding provision applies; the penultimate sentence does not apply because the dealer does not bail grain or issue warehouse receipts and the last sentence does not apply because the dealer does own a vehicle to transport farm produce.

Category 8: Neither bonding provision applies, essentially for the same reasons as category 7 (except here, the dealer not only owns a vehicle, but also does have a storage or handling facility).

Thus, we think the ambiguity becomes readily apparent. Although the first sentence of MCL 285.67a(1) suggests that it applies to all grain dealers, the penultimate and last sentences, the only provisions regarding the amount of the bond, do not cover all grain dealers. Further, those last two sentences contain an ambiguity because they can, in certain circumstances, both apply conflicting bonding require-

ments to the same grain dealer. Thus, while in some cases it may be clear which bond requirement to apply, in others the statute applies either conflicting bond amounts or no bond amount.

However, if we look to the penultimate sentence of MCL 285.67a(1) for guidance, the ambiguity may be resolved. That is, if we read the statute as applying only to grain dealers who are bailees of farm produce or who issue warehouse receipts, the ambiguities are resolved. The penultimate sentence applies where the grain dealer has storage capacity and the last sentence applies where the dealer does not have storage capacity.

Furthermore, such an interpretation does not torture the wording of the statute. The penultimate sentence specifically refers to grain dealers who are bailees or issue warehouse receipts, while the reference to "a grain dealer" in the last sentence means the group of grain dealers as in the previous sentence, i.e., those who are bailees or who issue warehouse receipts. That is, the distinction between grain dealers referred to in the two sentences is not between bailees and nonbailees, but between those bailees who have storage capacity and those who do not.

Therefore, for the reasons set forth above, and for the reasons set forth in our earlier opinions, we hold that MCL 285.67a(1) is ambiguous and its proper interpretation is that it should apply only to warehouse receipt transactions for bailed grain.

We once again affirm. Defendants may tax costs.