*266 HATHAWAY, J.
(dissenting). This case addresses the procedural requirements imposed on medical malpractice actions by the notice of intent (NOI) statute[1] and the notice of nonparty fault (NNPP) statute.[2] At issue are the statutory time requirements for adding a defendant, who has been identified as a nonparty at fault, to a pending medical malpractice action. The majority holds that plaintiffs action against the identified nonparty at fault, Cardiovascular Clinical Associates, EC. (CCA), must be dismissed with prejudice because it was not commenced before the expiration of the period of limitations. The majority also opines that plaintiff is not entitled to amend his original NOI. I respectfully dissent because the majority has incorrectly interpreted the relevant statutes, including the applicable statutes of limitations.[3]
*267 Plaintiff Willie Driver’s original complaint alleging medical malpractice was filed against defendant Mansoor Naini, M.D., and his employer, defendant Michigan Cardiology Associates, PC. (MCA), on October 23, 2006.[4] The lawsuit alleged that plaintiff was treated by Dr. Naini for approximately 22 years, and his last visit was in October 2005. Plaintiff alleged that after he reached the age of 50, Dr. Naini failed to perform any routine colon cancer screening, despite plaintiffs age and the fact that he had a family history of colon cancer. Plaintiff further alleged that in November 2005 he was diagnosed with stage IV colon cancer with metastasis to the liver and that, if Dr. Naini had performed routine screening, plaintiffs cancer would have been diagnosed at a much earlier stage.
On January 15, 2007, MCA and Dr. Naini identified CCA as a nonparty at fault. The NNPF set forth the following:
Although Defendants have denied and continue to deny any claimed violations of the standard of practice in regard to the care and treatment rendered or allegedly rendered to Wiliie [sic] Driver, it is believed that Mansoor C. Naini, M.D., was an employee and or agent of Cardiovascular Clinical Associates, EC., during the times called into question by the plaintiffs. Thus, to the extent that the plaintiffs allegations are true, and those allegations have been and continue to be denied, Cardiovascular Clinical Associates, EC., is or may be legally responsible, pursuant to the legal doctrine of respondeat superior or vicarious liability, for any and all alleged acts of professional negligence of its agent, actual and/or ostensible, servants and or employee, Mansoor C. Naini, M.D. Specifically, the alleged failure to recommend that Mr. Driver undergo a routine colonoscopy *268 once he reached the age of 50 and/or failing to follow up on allegedly abnormal lab values, such as an elevated [carcinoembryonic antigen level].
In response to receiving this notice, plaintiff provided an NOI to CCA on February 1, 2007. Plaintiff also filed a motion to amend his complaint to add CCA as a defendant and filed suit against CCA on March 22, 2007. The majority holds that plaintiffs NOI and complaint against CCA were untimely. I disagree.
To determine whether plaintiffs NOI and complaint against CCA were timely, we must consider the NOI and NNPF statutes, as well as the applicable statutes of limitations.[5] Given that this action was filed against CCA as a result of its designation as a nonparty at fault, the proper starting point for our analysis is the NNPF statute, MCL 600.2957. That statute provides:
(1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to [MCL 600.6304], in direct proportion to the person’s percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.
*269 (2) Upon motion of a party within 91 days after identification of a nonparty, the court shall grant leave to the moving party to file and serve an amended pleading alleging 1 or more causes of action against that nonparty. A cause of action added under this subsection is not barred by a period of limitation unless the cause of action would have been barred by a period of limitation at the time of the filing of the original action.
(3) [MCL 600.2956 to 600.2960] do not eliminate or diminish a defense or immunity that currently exists, except as expressly provided in those sections. Assessments of percentages of fault for nonparties are used only to accurately determine the fault of named parties. If fault is assessed against a nonparty, a finding of fault does not subject the nonparty to liability in that action and shall not be introduced as evidence of liability in another action.
As evidenced by the plain language of the statute, its purpose is to allow the trier of fact to assess the appropriate percentage of fault attributable to each of the named parties in an action. In order to accomplish this, the statute allows parties to identify nonparties as liable, so that a nonparty’s proportionate share of responsibility may be determined. The trier of fact determines the percentage of fault of the parties and nonparties at the time of trial. If a nonparty is assessed a percentage of fault, that percentage is not awarded to the plaintiff because a “finding of fault does not subject the nonparty to liability in that action . . . ,”[6] However, if a nonparty is identified, the plaintiff may choose to add the nonparty as a named defendant to the suit.
MCL 600.2957(2) sets forth the procedural requirements imposed on a plaintiff who chooses to add an identified nonparty to a suit. “Upon motion of a party within 91 days after identification of a nonparty, the court shall grant leave to the moving party to file and serve an *270 amended pleading alleging 1 or more causes of action against that nonparty. ”[7] Further, the statute sets forth a framework to allow a plaintiff to bring a claim that may otherwise be barred by a statute of limitations. “A cause of action added under this subsection is not barred by a period of limitation unless the cause of action would have been barred by a period of hmitation at the time of the filing of the original action.”[8] Thus, for purposes of calculating the period of limitations, a plaintiff who adds a nonparty as a named defendant stands in the same position as he would have on the date of the original filing.
There is no dispute in this case that plaintiff met the first requirement of the NNPF statute when he filed a motion to add CCA as a party within 91 days of CCA being identified as a nonparty at fault. The first disputed issue is whether the period of limitations applicable to plaintiffs claim against CCA had already expired when plaintiffs original action was filed. The majority holds that the suit against CCA was time barred because it would have been untimely when plaintiffs original action was filed. I disagree because the majority errs in its calculation of the applicable periods of limitations. The correct calculations require three separate analyses.
Medical malpractice actions are governed by a two-year statute of limitations[9] and the period of limitations is tolled when an NOI is mailed.[10] Plaintiffs claim against CCA is premised on CCA’s alleged vicarious liability for the acts of Dr. Naini. [11] According to the medical records *271 in this case, plaintiffs treatment with Dr. Naini spanned a 22-year period ending on Oct 18, 2005. Plaintiff provided CCA with an NOI on February 1, 2007. Thus, plaintiff may proceed with a claim of malpractice for any acts of negligence occurring after February 1, 2005, by virtue of the two-year period of limitations without relying on the discovery rule or the NNPF statute.
According to the medical records, Dr. Naini treated plaintiff on three occasions between February 1, 2005, and November 2005, at which time plaintiffs cancer was diagnosed.[12] Plaintiff alleges that Dr. Naini committed malpractice by failing to perform screening on each date that he treated plaintiff. Thus, the majority errs by assuming that the general two-year period of limitations had expired with regard to all of plaintiffs claims at the time the original action was filed. While claims arising from treatments before February 1, 2005, may have been barred by the two-year statute of limitations, claims for acts of negligent treatment after that date are not. Accordingly, there is no question that at least portions of plaintiffs claim against CCA were timely.
Further, MCL 600.5838a(2) provides an extension of the period of limitations when a claim is newly discovered:
Except as otherwise provided in this subsection, an action involving a claim based on medical malpractice may be commenced at any time within the applicable period prescribed in [MCL 600.5805] or [MCL 600.5851 to 600.5856] or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, *272 whichever is later. However, except as otherwise provided in [MCL 600.5851(7)] or (8), the claim shall not be commenced later than 6 years after the date of the act or omission that is the basis for the claim. The burden of proving that the plaintiff, as a result of physical discomfort, appearance, condition, or otherwise, neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim is on the plaintiff. A medical malpractice action that is not commenced within the time prescribed by this subsection is barred.
A newly discovered claim is afforded its own six-month period of limitations that begins to run at the time the claim is discovered, assuming the plaintiff meets the requirements of the statute.[13] In this case, plaintiff alleges that he was unaware of the claim against CCA until he received the NNPF on January 15, 2007. Assuming plaintiff meets his burden of proving that he “should not have discovered” the existence of the claim against CCA at an earlier date, plaintiffs claim against CCA is governed by the six-month period of limitations, subject to a six-year statute of repose.[14]
*273 Importantly, however, the issue of whether plaintiff should have known of the existence of the claim against CCA before January 15, 2007, has not yet been considered or decided by the trial court. At the hearing on CCA’s motion for summary disposition, the trial court only ruled on whether plaintiff was able to rely on the NNPF statute when filing his claim against CCA. The trial court did not rule on the question whether plaintiff should have known of the claim against CCA at an earlier date. Thus, it is premature for this Court to decide whether plaintiff can avail himself of the discovery rule without remanding this issue to the trial court for further fact-finding.[15]
Moreover, the NNPF statute creates its own 91-day window in which a plaintiff can bring a claim against the identified nonparty at fault, as long as the claim would have been timely on the date that the original action was filed. This 91-day window is applicable whether the claim is known or unknown. In this case, the original action against Dr. Naini and MCA was filed on October 23, 2006. Using the date of the original filing, any claims arising out of malpractice committed after October 23, 2004, are timely. The medical records show that plaintiff treated with Dr. Naini four times after October 23, 2004.[16] Clearly, portions of plaintiffs *274 claim are timely in light of the NNPF look-back period and the two-year statute of limitations.
Further, an additional analysis is required under the NNPF statute because plaintiffs original claim was based in part on the discovery rule.[17] Therefore, we must also determine whether the NNPF 91-day window allowed plaintiff to rely on the discovery rule, applicable to his original claim, in order to avoid the statute-of-limitations defense with regard to his claim against CCA.
The majority erroneously asserts that plaintiff cannot use the NNPF 91-day window because plaintiff did not provide an NOI to CCA six months before filing the original action. However, the majority errs in this analysis. Under this reasoning, no plaintiff who brings a malpractice lawsuit under the discovery rule can ever use the NNPF statute to bring a claim against an identified nonparty at fault because no plaintiff will ever have provided an NOI to a nonparty at fault six months before filing the original suit.[18] This reasoning renders an entire provision of the NNPF statute, the provision allowing plaintiffs to file claims against non- *275 parties at fault, nugatory. This clearly was not the intent of the Legislature and violates the basic tenets of statutory construction.
The majority fails to recognize that the NNPF statute creates it own 91-day window in which to bring claims against identified nonparties at fault. If the majority’s reasoning were correct, and a plaintiff were not afforded the opportunity to start his or her claim by providing an NOI to the nonparty at fault during the 91-day window, the NNPF and NOI statutes would be in irreconcilable conflict.[19] If the statutes conflict, as the Court of Appeals held, we would need to determine which statute is more specific.[20] If the NOI statute is the more specific statute, the proper resolution is to disallow use of the NNPF statute in malpractice cases altogether, not just to limit use of the NNPF statute to one party. If the NNPF statute is the more specific statute, we would need to consider whether the NOI waiting periods are applicable to malpractice claims because the Legislature failed to address them in the NNPF statute. However, before declaring that an irreconcilable conflict exists, we must determine whether there is a way to harmonize these statutes in the case before us.[21]
To determine whether there is a way to read the statutes harmoniously, we must examine whether plaintiff was required to provide CCA an NOI and, if so, what the applicable waiting period was. We must also resolve whether dismissal is required because plaintiffs *276 complaint was filed too early, as the Court of Appeals concluded.[22] I find that these statutes can be read harmoniously, but only when read in concert with MCL 600.2301.[23] Therefore, I disagree with the Court of Appeals’ conclusion that, because plaintiff filed “too early” against CCA, his complaint must be dismissed.
The NOI statute, MCL 600.2912b, requires that plaintiffs must provide medical malpractice defendants an NOI before filing suit. It also mandates different waiting periods, depending on the circumstances, before a plaintiff may file suit. Providing an NOI does not pose a conflict with the NNPF statute on its face; however, under the majority’s analysis, the waiting periods do. The NOI statute provides a waiting period of 182 days for defendants known before the plaintiff files suit,[24] a 91-day waiting period when suit is filed against a newly discovered defendant during the pendency of the suit,[25] and a 154-day waiting period if the defendant fails to respond to the NOI. Importantly, the statute also allows the defen *277 dant to forgo the waiting period altogether by indicating in writing that he or she does not wish to settle the claim. MCL 600.2912b(9) provides:
If at any time during the applicable notice period under this section a health professional or health facility receiving notice under this section informs the claimant in writing that the health professional or health facility does not intend to settle the claim within the applicable notice period, the claimant may commence an action alleging medical malpractice against the health professional or health facility, so long as the claim is not barred by the statute of limitations.
The NNPF statute contains its own time limitation. “Upon motion of a party within 91 days after identification of a nonparty, the court shall grant leave to the moving party to file and serve an amended pleading alleging 1 or more causes of action against that non-party.”[26] The majority opines that this statute only requires that a motion be filed within 91 days and that the amended pleading adding the nonparty may be filed at some later date. However, this holding is at odds with how this Court has previously interpreted the NNPF statute. Following the adoption of the NNPF statute, this Court adopted MCR 2.112(K)(4) to guide parties on the proper procedure to implement the NNPF statute. *278 The rule provides: “Amendment Adding Party. A party served with a notice under this subrule may file an amended pleading stating a claim or claims against the nonparty within 91 days of service of the first notice identifying that nonparty” (Emphasis added.) Because litigants and lower courts are expected to follow these rules, they should also be able to rely on the rules as an accurate representation of this Court’s interpretation of the statute that the rule is designed to implement.[27]
Given the lack of clarity in the NNPF statute, the apparent conflict between the NNPF statute and the court rule, and assuming plaintiffs complaint was filed too early, the next question becomes what the appropriate penalty or remedy should be in this circumstance. While the Court of Appeals held that plaintiffs complaint against CCA was filed too early and that it must be dismissed with prejudice, I disagree. The Court of Appeals failed to consider the mandates of MCL 600.2301, which clearly apply in this situation.
MCL 600.2301 provides:
The court in which any action or proceeding is pending, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just, at any time before judgment rendered therein. The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties.
The plain language of this statute imposes a duty, which cannot be ignored, on all courts. It requires that *279 “[t]he court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties.” (Emphasis added.) This is not a discretionary provision, but a legislative mandate that courts must follow. In determining whether relief is available under MCL 600.2301, we analyze the two § 2301 factors allowing for a cure.[28] First, we must decide whether a substantial right of a party is implicated. Second, we must decide whether a cure is in the furtherance of justice.
In this instance, plaintiff appears to have attempted to follow the applicable procedural requirements. He timely filed a motion to add CCA as a party. He timely provided an NOI to CCA within the period of limitations. The alleged defect or error in the proceeding is that plaintiff filed his complaint against CCA too soon. However, there is simply no substantial right of a party at stake in this circumstance. At most, CCA was deprived of a short period of time in which it could have attempted to settle the claim. However, CCA has not demonstrated any intent or desire to settle this claim. Furthermore, CCA was not deprived of a substantial right because, as previously demonstrated, plaintiffs suit was not barred by any statute of limitations. Thus, CCA could not have raised a valid statute of limitations defense.
Next, this Court must decide whether a cure would be in the furtherance of justice. I believe that it would be. In Bush, we held that the plaintiffs good-faith attempt to comply with the NOI content requirements of MCL 600.2912b justified a cure. Like the plaintiff in Bush, plaintiff in this case attempted to follow the procedural requirements for adding a nonparty at fault. *280 Given the complexity of the requirements, it can hardly be said that plaintiff intentionally disregarded the applicable statutes. Accordingly, a cure would be in the furtherance of justice. Therefore, MCL 600.2301 can be applied, and plaintiffs claim should not be dismissed with prejudice. Instead, because no substantial right of the parties has been impacted, the error should be disregarded under the plain language of MCL 600.2301.
For these reasons, the majority errs in holding that CCA is entitled to summary disposition and that plaintiffs lawsuit must be dismissed with prejudice. Therefore, I respectfully dissent.
Marilyn Kelly, J., concurred with Hathaway, J.
CAVANAGH, J. I concur in the result proposed by Justice Hathaway’s dissent.

 MCL 600.2912b.

 MCL 600.2957(2).

 MCL 600.5805(6) and MCL 600.5838a(2).

 There are two plaintiffs in this case, Willie Driver and his wife, Beverly Driver. The majority uses the singular term “plaintiff” because Beverly Driver’s claims are derivative of Willie Driver’s claims. To avoid confusion, I will also use the singular term “plaintiff.”

 In examining a statute, we follow the established rules of statutory construction. The purpose of statutory construction is to discern and give effect to the intent of the Legislature. Potter v McLeary, 484 Mich 397, 410; 774 NW2d 1 (2009), citing Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999). In doing so, we first look to the actual language of the statute. Potter, 484 Mich at 410. If a statute is clear and unambiguous, it must be enforced as written and no further judicial construction is allowed. Sun Valley, 460 Mich at 236. Further, a statute must he read as a whole, and while individual words and phrases are important, the words and phrases should be read in the context of the entire legislative scheme. Herman v Berrien Co, 481 Mich 352, 366; 750 NW2d 570 (2008).

 MCL 600.2957(3).

 MCL 600.2957(2).

 Id.

 MCL 600.5805(6).

 See MCL 600.5856(e); MCL 600.2912b.

 The NNPF did not identify specific dates and merely stated, “ [I]t is believed that Mansoor C. Naini, M.D., was an employee and or agent of Cardiovascular Clinical Associates, EC., during the times called into question by the plaintiffs.”

 Dates of visits shown in the medical records include April 4, 2005, April 18, 2005, and October 18, 2005. Plaintiffs second amended complaint alleged that CCA was Dr. Nairn’s employer on these dates. While it is doubtful that screening on October 18, 2005, would have been beneficial, a question of fact exists regarding whether screening would have been beneficial during plaintiffs April 2005 visits.

 Curiously, the majority states that “[r]eceipt of notice of a nonparty at fault under MCL 600.2957(2) is irrelevant to determining the date of accrual of a medical malpractice claim.” Ante at 263. This statement is contrary to any logical reading of the discovery rule. Obviously, the accrual date for a newly discovered claim is the date the claim was discovered.

 Plaintiff and defendant dispute whether plaintiff should have known of the claim against CCA at an earlier date. Plaintiff states that he was unaware of any employer other than MCA until he received the NNPF. Defendant counters that the medical records make reference to CCA, putting plaintiff on notice of the claim against CCA. However, mere reference to an entity in medical records may not necessarily put a plaintiff on notice of a claim. The claim at issue involves a claim for respondeat superior, which requires knowledge of a legal relationship between the parties. Legal relationships in a medical setting can be complex and can range from independent contractor agreements to traditional employment agreements to no legal relationship whatsoever. *273 Moreover, the nature of the relationship between a provider and the building where services are rendered or corporate names in charts are generally only within the defendant’s knowledge. Thus, plaintiffs claim that he was unaware of the existence of the claim against CCA is not unreasonable on its face.

 See Blair v Wayne State Univ, 393 Mich 769 (1974) (peremptorily reversing the Court of Appeals when the issue was not tried or considered by the trial court because the defendants were entitled to an opportunity to be heard.)

 This period covers one additional date, January 17, 2005, in addition to those noted in footnote 12 of this opinion.

 Plaintiff alleged in the original action that he did not know, and could not have known, of the existence of the claim until Ms cancer was diagnosed in November 2005.

 To exacerbate this issue, there is no way for a plaintiff to definitively identify which NOI waiting period he or she is required to follow before filing suit and no way to comply with a six-month waiting period. For instance, to the extent that a plaintiff relies on the discovery rule, the NOI waiting period is 91 days. MCL 600.2912b(3). However, plaintiffs may only avail themselves of the 91-day NOI waiting period if they should not have known of the claim at an earlier date. Id. While a plaintiff may believe he or she is entitled to rely on the discovery rule before filing suit, the trial court will not rale on the issue until after the lawsuit is filed. Most importantly, assuming a plaintiff is required to use the 182-day rule and waits 182 days before filing, the six-month period of limitations will have expired.

 When two legislative enactments conflict, the more specific enactment controls. Frame v Nehls, 452 Mich 171, 176 n 3; 550 NW2d 739 (1996).

 Id.

 If statutes lend themselves to a harmonious construction, that construction controls. In re Project Cost & Special Assessment Roll for Chappel Dam, 282 Mich App 142, 148; 762 NW2d 192 (2009).

 The majority focuses much of its analysis on whether plaintiff can amend his NOI to add CCA. While amending his NOI is one possible course of action that could provide relief, it is unnecessaiy to address that issue in this instance. Plaintiff did provide an NOI to CCA before the expiration of the period of limitations. Thus, the primary issues for resolution here are whether plaintiff filed too early and whether MCL 600.2301 provides relief. I will assume arguendo that plaintiff’s suit was filed too early in this instance.

 All three statutes are part of the same statutory scheme, the Revised Judicature Act, necessitating that they be read together.

 MCL 600.2912b(1) provides:
Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced.

 MCL 600.2912b(3) provides:
The 182-day notice period required in subsection (1) is shortened to 91 days if all of the following conditions exist:
*277 (a) The claimant has previously filed the 182-day notice required in subsection (1) against other health professionals or health facilities involved in the claim.
(b) The 182-day notice period has expired as to the health professionals or health facilities described in subdivision (a).
(c) The claimant has filed a complaint and commenced an action alleging medical malpractice against 1 or more of the health professionals or health facilities described in subdivision (a).
(d) The claimant did not identify, and could not reasonably have identified a health professional or health facility to which notice must be sent under subsection (1) as a potential party to the action before filing the complaint.

 MCL 600.2957(2).

 The majority now suggests that a malpractice litigant could seek a later amendment under the last sentence of MCR 2.112(K)(4), which states that “[t]he court may permit later amendment as provided in MCR 2.118.” Nevertheless, that does not resolve the problem because nothing in MCR 2.118 requires the trial court to grant leave to add the party. Moreover, there is no way for a plaintiff to definitively identify which NOI waiting period he or she is required to follow before filing suit.

 See Bush v Shabahang, 484 Mich 156; 772 NW2d 272 (2009).